CINCINNATI, N. O. & T. P. RY. CO. v. CRAIN.

Eastern Section.    May 30, 1933.

Judgment Affirmed by Supreme Court, November 18, 1933, on Condition that Plaintiff Accept an Additional Remittitur, of $1,000.

Lynch, Bachman, Phillips & Lynch, of Chattanooga, for plaintiff in error.

E. J. Bryan and S. H. Ford, both of Chattanooga, for defendant in error.

PORTRUM, J. This case was instituted by Mrs. Cecil Crain to recover compensation for the death of her husband, E. L. Crain. Mr. and Mrs. Crain lived in Chattanooga, and Mr. Crain was employed and had been in the employ of the defendant company in its railroad yards in Chattanooga for a number of years. On Sunday, January 4, 1932, a friend of Mr. Crain's was passing through Chattanooga en route to Detroit, and Mr. Crain left Chattanooga with this friend by train, and Mr. Crain must have gotten off of the train at Spring City, for in the afternoon of this day he was seen by several people a mile from the station, sitting on the end of a tie of the main line of the company's track, watching some boys and their dogs chase rabbits. He was sitting on the tie, leaning back against the rail, with his hands interlocked behind his head. And he was in this position when a train, approaching from the station, ran over and killed him. The boys scattered along the track watching the rabbit chase, saw the deceased sitting upon the

tie and also the approaching train, and one boy attempted to run down the side of the track towards the approaching train and towards the deceased, hollering in an attempt to notify him of his danger. Others up the track near the train attempted to attract the engineer's attention and to stop the train before it reached him. This commotion seemed not to have attracted the attention of the deceased further; it is said that he turned his head in the direction of the boys and the approaching train and then resumed his former position. He made no move to escape the train.

The deceased was sitting within fifty feet of the mile post, indicating the city limits, and from the station south, in the direction of the deceased, the track was straight to within 265 feet of the deceased, at which point the roadbed began a curve to the left, and the curve was so slight it was designated by the engineer as an easement. If a straight line with the track be continued at the place of the beginning of the curve, then the base of this angle at the point the man was killed would be seven and eight-tenths feet. The vertical line of the angle would be approximately 265 feet.

The whistle of the engine was blown and the brakes applied almost simultaneously with the engine's collision with the man; and the excuse for not earlier blowing the whistle and applying the brakes is that the outlook could not see the obstruction upon the track because of the curve and the extension of the engine in front of him, until the front of the engine began to round the curve and extend his vision.

The declaration contains three counts, but only one was submitted to the jury, which alleges the violation of subsection 4 of section 1574 of Shannon's Code, the provision of which is so well known it is not necessary to quote. This section requires some one on the engine always on the lookout ahead, and when an obstruction appears on the road that the whistle be blown and the brakes put down, and every possible means employed to prevent the accident. The case went to trial before a jury, and a verdict was returned in favor of the plaintiff for $7,500, then the court reduced this verdict to $2,500 and overruled a motion for a new trial. The defendant, and also the plaintiff, have prosecuted appeals in the nature of writs of error.

Is there any evidence to support this verdict? The company insists that it is shown it complied with the statute immediately upon the object or obstruction becoming visible to the lookout, and that there is no material evidence tending to establish that the obstruction could have been seen earlier. The company introduced several witnesses, who had made a trial of vision upon an engine approaching from the station, and a sack filled with straw had been placed at the place where the deceased was killed, and the experimenting outlook dropped a sack of flour at the point he could

first see the sack of straw. One witness looked out the side window of the cab and dropped his sack 265 feet from the place of the accident, while the other, looking through the front cab window, dropped his sack 222 feet from the place of the accident. No like test was made by the plaintiff, and it is insisted this testimony is conclusive. It is conceded that the station is a mile away, and that the track is straight until it reaches 265 feet of the place of the accident, approximately, where it curves to the left. And it is further claimed that since the boiler of the engine is forty-eight feet long, and is to the side and in front of the engineer, who was the outlook, that the boiler obstructed the engineer's view of the place of the accident from the station until the engine had reached and begun to take the curve, or until it had approached within 265 feet of the deceased. This conclusion is controverted by the plaintiff and makes the issue to be determined. Counsel for the railway argued that the boiler obstructs the view and makes it equivalent of the engineer looking along a straight edge, and one cannot see around a corner. Plaintiff's counsel admits that is true for a short distance, but compares the engineer's vision to one looking through a gun barrel, or we will say a telescope. The field of vision widens from the glass of a telescope in geometrical progression, to the limit of power of vision. This is the principle upon which the plaintiff rests her case.

Her theory is supported by the cross-examination of the defendant's fireman; he admits that upon a straight track the farther the engine is from a designated point ahead the wider is the outlook's field of vision. That on an engine approaching a grade crossing 1,000 feet away, the outlook can see cars approaching the track 100 feet distant on each side of the railroad track. Just how close the engine could be and the engineer still see the opposite rail, when the boiler cut off his vision at the point of intersection, is not shown, but this evidence demonstrates that the deceased was an object in view of the lookout from near the station until the length of the boiler obscured him. The deceased's actual position was equivalent to a man sitting on the ties on the fireman's side of the track, for the track lacked only seven and eight-tenths feet of being straight at this point, and this distance is not the width of the track.

The fireman's evidence is reasonable, and these facts have been repeatedly established in this court; it is but a detailed application of a natural law, and the experimental testimony of other witnesses can only make an issue for the jury. We think it a question for the jury to determine whether or not the company has complied with the statute, and the court did not err in submitting the question to the jury.

There are assignments of error criticising the charge of the

court, containing excerpts from the charge as erroneous statements of the law. We think the court very clearly charged the law applicable to the precautionary statute. The only attack that could be made upon this charge, as we see it, is that it is not full enough to cover the defendant's defenses, and this character of an attack can only be made after a special request is made to the court. Then the special request must be embodied in the assignments of error. We overrule the assignment directed at the charge.

The sixth assignment of error is directed at the admission of testimony of three witnesses who stood upon the track near the station to test their vision, and determine how far a man could be seen upon the track at the place where the deceased met his death. It is said that this evidence was incompetent because the demonstration was not made under the same condition confronting the outlook. This evidence was introduced by the plaintiff in her proof in chief, and was competent to show that the deceased was in the vision of the fireman, in the event the company relied upon the fireman as its outlook. The plaintiff could not anticipate the defendant's line of defense, and the court could not assume that the defendant would establish its line of defense, making this testimony inapplicable to the engineer, who was named as the outlook. This was a test of vision, and the only condition differing between the witnesses and the fireman was that he was elevated on the engine above the witnesses, and the line of vision of all was unobscured. However, this testimony is only cumulative, for the fireman's testimony establishes that the deceased was in the line of vision of the engineer. In no event was its admission reversible error.

The plaintiff is dissatisfied because the trial judge reduced her verdict from $7,500 to $2,500, and she accepted the remittitur under protest and has appealed; the company is dissatisfied because the trial judge did not reduce the verdict to a smaller amount. The plaintiff's recovery is not measured by the earning capacity, but the contributory negligence of the deceased. The deceased was a railroad man, he sat down upon the track and remained in one position for longer than thirty minutes, and he knew the schedule of the trains, and if he had thought he would have known that one was due. We think the plaintiff is in no position to complain at the remittitur. Her assignments are overruled.

The company says the deceased turned his head and saw the train approaching, yet made no move to get out of its way. He turned his head, but we cannot say that he saw the train, especially in view of the legal presumption against suicide. This was a question for the jury. Under the facts, and in view of the deceased's contributory negligence, it is said that $2,500 is too much, and the recovery should be reduced. From the evidence, as we have above

detailed it, this man could have been seen by the outlook, had the outlook been alert, for a sufficient distance to have perhaps prevented the accident, at least to have blown the whistle and thus given the deceased ample warning. His death may be attributable solely to the failure of the outlook to perform his statutory duty. Under these circumstances we do not think we should disturb the decision of the trial judge, and his judgment is affirmed. The cost of the respective appeals will be borne by the plaintiffs in error and the surety on the appeal bonds.

Snodgrass and Thompson, JJ., concur.

Affirmed by Supreme Court on condition that plaintiff accept an additional remittitur of $1,000.